**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MORRIS MARTIN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE: 2:05-CV-389-PRC |
| | ) | |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL OF THE UNITED STATES, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 32], filed by Defendant, John E. Potter, Postmaster General of the United States, on April 16, 2007. For the following reasons, the Court grants the Defendant's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On August 22, 2002, Plaintiff Morris Martin filed an Equal Employment Opportunity ("EEO") Complaint alleging discrimination on account of his race (African American), gender (male), and retaliation for prior EEO activity.[1]  Specifically, Plaintiff alleges that he was discriminated against on the basis of his race, gender, and his prior EEO activity when, on May 30, 2002, his supervisor, Delia Hernandez, refused to grant Plaintiff ten hours of sick leave and, when on June 3, 2002, another supervisor, Cheryl Smith, refused to speak with Plaintiff regarding the sick leave. Subsequently, on September 30, 2002, Plaintiff's Complaint was amended to include an allegation of harassment by supervisors Ethel Wheeler and Kim Nunn on the basis of Plaintiff's race,

---

[1] During the EEO Investigation, Plaintiff testified that he was a witness for management in a 1998 EEO investigation of Cheryl Smith. However, Cheryl Smith, in her EEO Investigative Affidavit stated that the Plaintiff's prior EEO involvement consisted of Plaintiff scheduling an EEO mediation hearing and failing to appear at the mediation conference or inform anyone of his intent to be absent.

gender, and prior EEO activities.

Plaintiff filed an Employment Discrimination Complaint with this Court on November 16, 2005, naming John E. Potter, Postmaster General of the United States, and "Gary P and DC"[2] as Defendants, and seeking relief under the following statutes: (1) Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5) ("Title VII"); (2) the Rehabilitation Act (29 U.S.C. § 701, *et seq*.); (3) Equal Rights Under Law (42 U.S.C. § 1981); and (4) the Family and Medical Leave Act (29 U.S.C. § 2601, *et seq*.).[3]  Specifically, Plaintiff alleges the following in his Complaint:

> There has been evidence from the Plant Mgm, MDO, and other supervisory personnel to persuade craft employees to lie, and break ethical values of their jobs in order to say anything negative to lose my job.  On 6/22/2005, at appromately [sic] 6:00pm, five Gary officers escorted employee Ken Jones and myself out of the building.  The claim Gary Policers [sic] said was trespassing.  Even the Postal Inspectors claim they have no knwledge [sic] of this.  There isn't any Police reports at all at the station as well.  Management continue to disrespect, show arrogance, intimidate, falsify claims of violence, and abuse the worker's right in contract.

Compl., p. 4.

Plaintiff attaches to his Complaint, the first page of a Request for Affidavit from the United States Postal Service (USPS) in which the Postal Service identified the specific issues accepted for investigation.  In order to identify Plaintiff's specific claims and the factual bases for these claims, the Defendant propounded written interrogatories to Plaintiff.[4]  Based on the Plaintiff's answers to interrogatories, the Defendant in his brief summarizes the Plaintiff's allegations as follows: The

---

[2] "Gary P and DC" likely refers to the "Gary Processing and Distribution Center" of the United States Postal Service located in Gary, Indiana.

[3] Plaintiff seeks relief under "FMLA."  The Court assumes for purposes of ruling on the Defendant's Motion for Summary Judgment that Plaintiff is referring to the Family and Medical Leave Act of 1993.

[4] On March 2, 2007, Plaintiff submitted answers to Defendant's interrogatories.  *See* Def. Br. Ex. J.

USPS discriminated against Plaintiff on the basis of race, gender, and in retaliation for prior EEO activities when: (1) management denied him ten hours of sick leave on May 30, 2002; (2) management refused to discuss the denial of sick leave with Plaintiff; and (3) Plaintiff's supervisors harassed him between July 21, 2002 and August 29, 2002.

On January 9, 2006, Defendant John E. Potter filed an Answer and Affirmative Defenses.

On January 20, 2006, Plaintiff filed a Motion to Appoint Counsel. On January 24, 2006, the Court took the Motion to Appoint Counsel under advisement and ordered the Plaintiff to submit a copy of the EEOC investigative file, a report of the Plaintiff's diligent efforts to appoint counsel, and financial information, by February 24, 2006. On March 29, 2006, and again on April 17, 2006, the Court ordered the Plaintiff to comply with the Order issued on January 24, 2006, since Plaintiff had failed to file the relevant reports with the Court. On May 24, 2006, the Court denied the Motion to Appoint Counsel. Thus, the Plaintiff proceeds *pro se* in this matter.

On August 3, 2006, during a Preliminary Pretrial Conference, Plaintiff moved to voluntarily dismiss Gary P and DC as a named Defendant in this case. On August 7, 2006, the Court granted the Motion and dismissed without prejudice Defendant Gary P and DC. Thus, this case remains pending only as to Defendant John E. Potter.

On April 16, 2007, Defendant filed a Motion for Summary Judgment and a Memorandum in Support of the Motion for Summary Judgment. On the same day, Defendant also sent a *Pro Se Timms* notice to the Plaintiff.

On May 8, 2007, the Defendant filed a Notice Regarding Service on Plaintiff. The Notice represented that the Defendant had served Plaintiff with his Motion for Summary Judgment by regular U.S. Mail on April 16, 2007, but that the Defendant had received the pleadings back from

the U.S. Post Office as undeliverable.  The Notice further stated that upon confirming the validity of the address with the Plaintiff, Defendant resent his Motion on May 8, 2007.

On June 14, 2007, the Court, *sua sponte*, ordered the Defendant to notify the Court as to the status of service of Defendant's Motion for Summary Judgment.  On June 21, 2007, Defendant filed Government's Response to Court's Order Regarding Service.  Defendant stated that on May 8, 2007, he sent to Plaintiff, by certified mail, his Motion for Summary Judgment, Memorandum in Support of Summary Judgment along with a *Timms* notice.  Defendant provided an online "Track and Confirm" printout from the United States Postal Service showing that the Defendant's mail was delivered on May 11, 2007 at 4:49 P.M.

On June 28, 2007, the Plaintiff filed a Motion for Continuance, which the Court construes as a response to the Defendant's Motion for Summary Judgment.[5]  On July 25, 2007, the Defendant filed a reply in support of his Motion for Summary Judgment.

The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S. C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[5]Although Plaintiff filed his response brief more than two weeks after the response deadline, the Defendant fails to object to the timeliness of Plaintiff's response in his reply brief.  Accordingly, the Court will consider Plaintiff's response in ruling on the Defendant's Motion for Summary Judgment.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge his "initial responsibility" by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if he chooses, may support his motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material

fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on his pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

Finally, the Court notes that no heightened standard of summary judgment exists in employment discrimination cases nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Srvcs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th

Cir. 1997)).  However, intent and credibility are critical issues, frequently found in employment

cases, that are genuinely contestable.  *Id.*  Nevertheless, summary judgment in favor of a defendant

is hardly unknown, or for that matter rare, in employment discrimination cases.  *Wallace*, 103 F.3d

at 1396.


## FACTUAL BACKGROUND[6]

*1.  Denial of Sick Leave*

Plaintiff, an African American male, was employed by the United States Postal Service

("USPS") at the Gary Processing and Distribution Center in Gary, Indiana, as a mail processor.  On

May 30, 2002, Plaintiff and his co-worker, Ken Jones,[7] began complaining and refusing to run the

mail on their assigned machines.  Shortly thereafter, on the same day, Plaintiff and Mr. Jones stated

that they were sick.  Plaintiff provided a request for ten hours of sick leave.  Specifically, Plaintiff

requested two hours of sick leave on Thursday, May 30, 2002, and eight hours of sick leave on

Sunday, June 2, 2002.  Plaintiff was scheduled to be off work on Friday, May 31, 2002, and

---

[6]  Local Rule 56.1(a) requires that a party opposing a motion for summary judgment submit a response that includes a "Statement of Genuine Issues" setting forth all material facts as to which a genuine issue exists and which may be litigated.  Local Rule 56.1(a) further provides that the "Statement of Genuine Issues" and the facts stated therein shall set forth all material facts, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence.  In the "Statement of Genuine Issues," the nonmoving party's response is not required "to respond to each and every fact, point by point, [but] it does require that the nonmoving party submit potentially determinative facts and identify factual disputes" that may preclude summary judgment.  *See Fox v. Lear Corp.*, 327 F. Supp. 2d 946, 948 (S.D. Ind. 2004).  Failure to include such crucial facts may be detrimental to the non-movant's case because the Court assumes the facts as claimed and supported by admissible evidence submitted by the moving party, unless they are controverted with supporting evidence by the nonmoving party.  *See* L.R. 56.1(b).  Plaintiff has not provided a Statement of Genuine Issues.  The only evidence submitted by the Plaintiff are United States Postal Service Request for or Notification of Absence forms for K. Graves, Jill Tomaszewski, and M. Chaveza.  Accordingly, the Court relies on the admissible material facts in the Defendant's  Statement of Material Facts that are not contested by Plaintiff's submitted evidence.

In order to more fully understand the context surrounding Defendant's admissible material facts, the Court, where appropriate, has provided Plaintiff's unsupported allegations in footnotes.

[7] Ken Jones is an African American male, who was Plaintiff's co-worker,  a mail processor and shared the same supervisor as Plaintiff.

Saturday, June 1, 2002.  Plaintiff filled out a Request for Notification of Absence ("Form 3971"), a form employees must fill out in order to receive sick leave.  Delia Hernandez, Plaintiff's supervisor, was suspicious of Plaintiff's motives because of his refusal to perform his work just prior to turning  in Form 3971 and because of the fact that the Plaintiff knew, two days early, that he would be sick on Sunday, June 2, 2002.

Ms. Hernandez asked the Plaintiff to provide medical documentation to support his sick leave request.  Plaintiff failed to submit the requested documentation and his request was denied. On July 25, 2002, Ms. Hernandez issued a fourteen day suspension based on Plaintiff's failure to provide documentation explaining the reason for his unscheduled absence.  Ms. Hernandez denies ever saying that Plaintiff and Ken Jones looked like "healthy black m[e]n" after receiving their request for ten hours of sick leave.[8]

USPS's policy on sick leave documentation requirements is outlined in the Employee Labor and Relations Manual ("ELM"), Sections 513.361 through 513.365.  Specifically, Section 513.361 states that "for periods of absence of 3 days or less, supervisors may accept the employee's statement explaining the absence.  Medical documentation or evidence of incapacity for work...is required...only when the supervisor deems documentation desirable for the protection of the interest of the Postal Service."  Def. Br. Ex. E.  Further, Article 10.5, Section 5 of the American Postal Workers Union (APWU) Agreement states that "for periods of absence of three (3) days or less, a supervisor may accept an employee's certification as reason for an absence." Def. Br. Ex. K at 11.

---

[8] In his Answers to Interrogatories, Plaintiff contends that Ms. Hernandez stated that "these black men [Plaintiff and Jones] look healthy to her."  Def. Br. Ex. J., ¶ 1.

*2.  Management's Refusal to Discuss Denial of Sick Leave*

Manager Cheryl Smith[9] does not recall the circumstances surrounding Plaintiff's allegation that she refused to speak with him on June 3, 2002.[10]  However, Ms. Smith believes that Plaintiff was likely advised that she was busy and could not see him at that time.

*3. Harassment by Supervisors Between July 21, 2002 and August 29, 2002*

From approximately July 21, 2002 through August 29, 2002, truck driver Cordale Micou, would come into Supervisor Kimberly Nunn's[11] unit and disrupt Plaintiff's work by talking to him. Thus, Ms. Nunn asked Mr. Micou to refrain from visiting her unit.  Because Mr. Micou continued to come into her unit to talk with Plaintiff, Ms. Nunn allowed Mr. Micou to speak with Plaintiff so long as Plaintiff continued to work his machine.  When Plaintiff began to shut down the machine so he could talk to Mr. Micou, Ms. Nunn informed Mr. Micou that if he did not stop coming to Ms. Nunn's unit and bothering Plaintiff, she would report Mr. Micou to his supervisors.

Ms. Nunn never forced Plaintiff to work beyond his four hour work restriction.[12]  Nor did she falsify grievance reports against the Plaintiff.[13]  Instead, Plaintiff routinely failed to follow instructions and constantly challenged supervisors on his assignment.  Ms. Nunn never attempted

---

[9] Ms. Smith is now retired, but at the time of the alleged incident in June 2002, Ms. Smith was the Manager of Distribution Operations at the Gary Processing and Distribution Center in Gary, Indiana.

[10] Plaintiff's EEO Complaint states that Ms. Smith refused to speak to him on June 3, 2002.  However, Plaintiff's answers to interrogatories state that Ms. Smith refused to speak to him on May 30, 2002.

[11] Ms. Nunn acted as a temporary supervisory between 2002 and 2005.  She is an African American female.

[12] In his Answers to Interrogatories, Plaintiff contends that Ms. Nunn forced him to relieve another employee of her work, although he had already worked four hours, the maximum number of hours he could work, and he had just taken medication that required him to sit.

[13] In his Answers to Interrogatories, Plaintiff asserts that Ms. Nunn falsified and filed several grievance reports, which stated that Plaintiff failed to follow instructions.

to persuade employee Issa Hawkins to change her statement regarding a potential safety violation.[14]

On July 21, 2002, Temporary Supervisor Ethel Wheeler[15] had a discussion with Plaintiff concerning when Plaintiff could relieve his co-workers, Diane Amos and Jill Tomaszewski.  After a discussion about when certain employees should be allowed to take their breaks, Plaintiff refused to relieve Ms. Amos and Ms. Tomaszewski for lunch.[16]  Ms. Wheeler never issued any disciplinary documents regarding this incident.

## DISCUSSION

### A. Plaintiff's Claims Under the Rehabilitation Act (29 U.S.C. § 701 *et seq.*), Equal Rights Under Law (42 U.S.C. § 1981), and FMLA (29 U.S.C. § 2601 *et seq.*)

*1.  The Rehabilitation Act*

Defendant argues that Plaintiff failed to state a claim cognizable under the Rehabilitation Act, Section 1981, and the FMLA, and that no genuine issues of material fact exist.  The Rehabilitation Act applies to federal government agencies and organizations that receive federal funding.  *See Wis. Cmty. Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006).  The Act prohibits these recipients of federal funds from discriminating against qualified individuals on

---

[14]In his Answers to Interrogatories, Plaintiff contends that Ms. Nunn persuaded another employee, Issa Hawkins, to change her statement when Ms. Nunn filed an incident report regarding a potential safety violation that occurred between Ms. Hawkins and Sharon Swart, another employee.

[15] Ethel Wheeler is employed as a flat sort operator at the Gary Processing and Distribution Center in Gary, Indiana.  She has worked for USPS since 1987.  Between 1992 and 2005, she acted as a temporary supervisor.  She is an African American female.

[16]In his Answers to Interrogatories, Plaintiff contends that on July 21, 2002, Ethel Wheeler ordered Plaintiff to take his break at 6:30 p.m. instead of at 7:00 p.m.  Plaintiff further states that when he questioned Ms. Wheeler's position, Ms Wheeler stated that Ms. Smith told her to "get anything on paper in order to get [Plaintiff]  fired."   Def. Br. Ex. J, ¶3.

the basis of their disability.  *See Novak v. Principi*, 442 F. Supp. 2d 560, 565 (N.D. Ill. 2006).   In

order to establish a *prima facie* case under the Act, a plaintiff must prove that:  (1) he suffers from

a disability; (2) he is qualified to perform the essential functions of the position with or without the

disability; and (3) he suffered an adverse employment action.  *See Jackson v. City of Chicago*, 414

F.3d 806, 810 (7th Cir. 2005).

 Plaintiff's EEO Complaint states that he was discriminated against on the basis of his gender,

race, and prior EEO activities. Plaintiff never asserts that he was discriminated against on the basis

of a disability. Further, nothing in the Plaintiff's Complaint, answers to interrogatories, or response

brief indicates that the Plaintiff suffers from any type of disability.  Accordingly, the Court finds that

no genuine issue of material fact exists, and that summary judgment is proper as to Plaintiff's claims

under the Rehabilitation Act.


 *2.  Equal Rights Under Law*

 Equal Rights Under Law (42 U.S.C. § 1981), is also inapplicable to this case.  While Section

1981 prohibits discrimination against individuals because of their race, it is well established that

Title VII, not Section 1981, is the exclusive remedy for federal claimants alleging discrimination

in their workplace.  *Davis v. Potter*, 301 F. Supp. 2d 850, 853 (N.D. Ill. 2004) (citing *Brown v. Gen.

Servs. Admin.*, 425 U.S. 820, 835 (1976)).  Employees of the USPS are considered federal

employees.  Accordingly, Section 1981 does not provide a basis for Plaintiff's claims in this case.

The Court finds that no genuine issue of material fact exists, and that summary judgment is proper

as to Plaintiff's claims under 42 U.S.C. § 1981.

*3. FMLA*

The FMLA entitles an employee to take a total of twelve workweeks of leave during a twelve-month period for the following: (1) the birth of a son or daughter of the employee; (2) placement of a son or daughter with the employee for adoption or foster care; (3) to care for a spouse, son or daughter, or parents with a serious health condition; or (4) a serious condition renders the employee unable to perform the functions of his employment. *See* 29 U.S.C. § 2612(a)(1). Employees bear the burden of establishing that they were entitled to leave under the FMLA. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997).

Plaintiff has failed to provide any information relating to a claim under the FMLA. Specifically, Plaintiff has made no allegations of discrimination related to any of the protective activities enumerated in 42 U.S.C. § 2612(a)(1). Moreover, even assuming Plaintiff believed such discrimination occurred, he failed to bring these claims in his initial EEO Complaint.

The Court finds that no genuine issue of material fact exists and that summary judgment is proper as to Plaintiff's claims under the FMLA (29 U.S.C. § 2601 et seq.).

## B.  Plaintiff's Claims Under Title VII

The Court now turns to Plaintiff's claims of discrimination (race and gender) and retaliation under Title VII based on alleged: (1) denial by management of ten hours of sick leave on May 30, 2002; (2) management refusal to discuss the denial of sick leave with Plaintiff; and (3) harassment by supervisors between July 21, 2002, and August 29, 2002.

Title VII of the Civil Rights Act of 1964 provides in part:

> It shall be an unlawful employment practice for an employer--
> (1) to fail or refuse to hire or to discharge any individual, or

12

otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

To be actionable, the offensive conduct must be based on one of the characteristics protected by Title VII, such as race. 42 U.S.C. § 2000e-2(a). Title VII makes retaliation unlawful by prohibiting discrimination against any employee who opposes a practice made unlawful by Title VII or because they made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). A plaintiff in an employment discrimination case may prove discrimination through either direct or indirect evidence. *Volovsek v. Wisconsin Dept. of Agr., Trade and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). Regardless of the method, the burden is on the plaintiff to demonstrate that genuine issues exist for trial. *Markel v. Bd. of Regents of the Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002).

Under the direct method of proof, a plaintiff may demonstrate discrimination with either direct evidence or circumstantial evidence. *Isbell v. Allstate Ins. Co*, 418 F.3d 788, 794 (7th Cir. 2005). In other words, the plaintiff must show either "an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Service, Inc*, 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)).

Direct evidence is evidence which, "if believed by the finder of fact, will prove the particular

fact in question without reliance upon inference or presumption." *Volovsek,* 344 F.3d at 689. Further, direct evidence of age or race discrimination essentially requires the defendant to have made an admission that the adverse employment action was based on race and/or age, in other words, a "smoking gun that points to discrimination." *Isbell*, 418 F.3d at 794 (quoting *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005)) (internal quotation marks omitted); *see also Dandy*, 388 F.3d at 272. In the instant case, the Court finds no admission from Ms. Hernandez, Ms. Smith, Ms. Nunn, or Ms. Wheeler stating that they discriminated against Plaintiff on the basis of his gender, race, or for his prior EEO activities. Therefore, the Court turns to whether circumstantial evidence of discrimination exists.

Circumstantial evidence allows "the trier of fact to infer intentional discrimination by the decision maker." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (internal quotation marks omitted). For example, circumstantial evidence may come in the form of: (1) suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that the employees similarly situated to the plaintiff other than in race or [gender] on which an employer is forbidden to base a difference in treatment received systematically better treatment; and (3) evidence that the plaintiff was qualified for the job in question but was passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005) (citing *Troupe v. May Dept. Stores* Co., 20 F.3d 734, 736 (7th Cir. 1994)). Circumstantial evidence is sufficient only when the plaintiff is able to construct "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."

*Isbell*, 418 F.3d at 794 (quoting *Rhodes v. Illinios Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Troupe*, 20 F.3d at 737).  The direct method requires that the circumstantial evidence must "point directly to a discriminatory reason for the employer's action."  *Jordan*, 396 F.3d at 832 (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

The Court finds that Plaintiff proffers no circumstantial evidence pointing to intentional discrimination.  Although Plaintiff claims that Ms. Hernandez stated "these black men [Plaintiff and Ken Jones] look healthy" to her, Def. Br. Ex. J, ¶ 1; Def. Br. Ex. K at 4, Ms. Hernandez denies in her Declaration ever making such a statement, and the Plaintiff has presented no admissible evidence to support his allegation.

Under the indirect method of proof set forth in *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The requirements for a prima facie case of race and gender discrimination under Title VII, and retaliation under Title VII are similar.  To establish a *prima facie* case of race and gender discrimination under Title VII, Plaintiff must show that: (1) he was a member of a protected class, (2) he was meeting his employer's expectations, (3) he suffered adverse employment action, and (4) similarly situated employees not in the protected class were treated more favorably.  *See Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002); *see also O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002).

Similarly, to establish a *prima facie* case of retaliation, Plaintiff must show  that: (1) he lodged a complaint of discrimination, (2) he was performing his job in a satisfactory manner, (3) he was subjected to an adverse employment action, and (4) only he, and not an otherwise similarly situated employee who did not complain, was subject to the adverse employment action.  *See*

*Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002)).  In *Stone*, the Seventh Circuit clarified that to establish a prima facie case of retaliation under the *McDonnell Douglas* analysis, an employee need not present proof of a "'causal link' between the protected expression in which the plaintiff engaged (as by filing a complaint about an unlawful act by his employer) and the adverse employment action of which he is complaining." *Stone,* 281 F.3d at 642.

If Plaintiff fails to establish even a single prong of the *prima facie* case, his claim cannot survive summary judgment.  *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).  However, if Plaintiff establishes a *prima facie* case for race or gender discrimination, or retaliation, an inference of discrimination exists, and the burden of production shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802-03 (1973); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1174 (7th Cir. 2002) (citing *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir. 1996)). Once Defendant provides a legitimate explanation, the inference of discrimination evaporates and the burden shifts back to Plaintiff to prove that the proffered justification is pretextual. *Millbrook*, 280 F.3d at 1174.

To establish pretext, Plaintiff must prove, by a preponderance of the evidence, either that Defendant was motivated by a discriminatory reason or that Defendant's proffered reason is unworthy of credence, in other words, a lie. *See Zaccagnini v. Chas. Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003).  A plaintiff can establish pretext by demonstrating that (I) the proffered reason has no basis in fact, (ii) the proffered reason did not actually motivate the adverse employment action, or (iii) the proffered reason is insufficient to motivate the adverse employment action. *Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Board*

*of School Comm'rs of City of Indianapolis, Ind.*, 42 F.3d 403, 412 (7th Cir. 1994).

*1. Denial of Ten Hours of Sick Leave*

Regarding Plaintiff's claim that he was denied sick leave on the basis of his race, gender, and past EEO activities, Defendant asserts that he is entitled to summary judgment because Plaintiff fails to satisfy the fourth element of his *prima facie* case. Specifically, Defendant argues that Plaintiff fails to identify a similarly situated employee outside his protected class.

"A similarly situated employee is one who is directly comparable to [the plaintiff] in all material respects." *Rogers,* 320 F.3d at 755 (internal quotation omitted) (finding that plaintiff failed to establish a similarly situated employee in a retaliation case). In disciplinary cases where employees claim they were disciplined more harshly than a similarly situated employee based on the same prohibited reason, plaintiffs must show that they are similarly situated with respect to performance, qualifications, and conduct. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Specifically, this entails a showing that the complainant and the similarly situated employee had the same supervisor, were subject to the same standards, and both engaged in similar conduct without any mitigating or aggravating circumstance that would differentiate their conduct or the employer's treatment of them. *Id.* at 618.

Plaintiff first compares himself to Diane Amos, who Plaintiff claims took fourteen days of sick leave in February 2002, and did not submit documentation. However, according to record evidence, Ms. Amos did not take two weeks of sick leave in February 2002. Therefore, Ms. Amos cannot be deemed to be a similarly situated employee.

Plaintiff also compares himself to Jill Tomaszewski, who Plaintiff claims took sick leave on

numerous occasions without submitting documentation.  Plaintiff attaches to his response brief a Request for or Notification of Absence form for Ms. Tomaszewski which indicates that she took 8 hours of sick leave on December 3, 2001.  The remarks on the form state "Doc. Req."  Pl. Br., at 8.  However, in her Declaration, Ms. Hernandez states that Ms. Tomaszewski "offered or provided documentation for her sick leave regardless of whether it was for less than three days."  Hernandez Decl. at ¶ 6.  Plaintiff fails to submit any evidence, which shows that Ms. Tomaszewski did in fact take sick leave, similar to Plaintiff, without submitting documentation.

Plaintiff also fails to make out a *prima facie* case for his retaliation claim because he fails to identify a similarly situated employee who did not engage in prior EEO activities but who received favorable treatment.  Thus, the Court finds that Plaintiff has failed to satisfy the fourth element of the *McDonnell Douglas* framework for his claims of race and gender discrimination and retaliation.

Next, Defendant argues that even assuming Plaintiff made a *prima facie* showing of gender and race discrimination, and retaliation, Defendant put forth legitimate nondiscriminatory reasons for denying Plaintiff's sick leave, which the Plaintiff cannot rebut.  As previously discussed, once Defendant provides a legitimate explanation, the inference of discrimination evaporates and the burden shifts back to Plaintiff to prove that the proffered justification is pretextual.  *Millbrook*, 280 F.3d at 1174.

In the instant case, Defendant asserts that he put forth an adequate nondiscriminatory reason for denying Plaintiff sick leave.  Defendant claims that Ms. Hernandez requested documentation because she deemed Plaintiff's sick leave suspicious under the circumstances.  Specifically, Ms. Hernandez states that Plaintiff's actions just prior to his submission of a sick leave request,

Plaintiff's refusal to run the mail, and his request for sick leave of not only two hours that day, but also of another eight hours after his scheduled two-day vacation, prompted her to request documentation in accordance with ELM Section 513.61 and Article 10.5 of the APWU Agreement. Ms. Hernandez, based on her judgment, demanded that Plaintiff submit documentation, which Plaintiff failed to provide. The Court finds that the Ms. Hernandez acted in accordance with ELM Section 513.61 and Article 10.5 of the APWU Agreement and that Defendant has proffered a nondiscriminatory reason for denying Plaintiff's sick leave.

In his response to the Defendant's Motion for Summary Judgment, Plaintiff did not establish or even attempt to establish why the Defendant's proffered reasons for denying his sick leave request are pretextual. The Court will not speculate on whether Defendant's proffered non-discriminatory reasons are pretextual. Because Plaintiff has not presented any evidence to rebut Defendant's non-discriminatory reasons for denying Plaintiff sick leave, no genuine issue of material fact exists and the Court grants summary judgment as to this claim.

*2. Management's Refusal to Discuss Denial of Sick Leave*

Regarding Plaintiff's complaint that management refused to discuss the denial of Plaintiff's sick leave on the basis of his race, gender, and past EEO activities, Defendant asserts that Plaintiff did not suffer an adverse employment action, and as such summary judgment should be granted because Title VII only protects employees from adverse employment actions.

An adverse employment action is defined as a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1044 (7th Cir 2002) (quoting

*Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)).  A termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits or responsibilities may constitute a materially adverse change.  *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001).  "Employees must be able to show a quantitative or qualitative change in the terms or conditions of employment."  *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 532 (7th Cir. 2003).   Moreover, "not everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit."  *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001).

Plaintiff alleges that Cheryl Smith refused to discuss the denial of Plaintiff's sick leave request. However, Ms. Smith's refusal to discuss this issue with Plaintiff does not amount to an adverse employment action by Defendant.  Ms. Smith's actions did not result in Plaintiff's termination, demotion, a less distinguished title, or a material loss of benefits or responsibilities. Further, Plaintiff did not experience any quantitative or qualitative changes in the terms and conditions of his employment as a result of Ms. Smith's refusal to speak with him.  The Court finds that Ms. Smith's refusal to speak with Plaintiff constitutes a "minor and trivial employment action" and thus grants summary judgment as to this claim.[17]

---

[17] Defendant also argues, and the Court agrees, that Plaintiff cannot make a *prima facie* showing of discrimination or retaliation based on Ms. Smith's refusal to discuss the denial of sick leave  because he fails to identify any similarly situated employees not in his protected classifications that were treated more favorably.

*3. Harassment by Supervisors Between July 21, 2002 and August 29, 2002*

Similarly, Defendant asserts that Plaintiff's claims that management harassed Plaintiff on the basis of his race, gender, and past EEO activities, do not amount to adverse employment actions.

First, Defendant argues that Kimberly Nunn's warnings for Cordale Micou to not enter her unit,  do not constitute an adverse employment action.  The Court agrees.  Ms. Nunn warned Mr. Micou not to come to her unit and that if he did, she would have to report him to his supervisor.  Ms. Nunn never warned, threatened, or disciplined the Plaintiff with respect to Mr. Micou's visits. Further, Plaintiff never experienced a material adverse change such as termination of employment, a demotion, a less distinguished title, or a material loss of benefits relating to Mr. Micou's visits.

Defendant also argues that summary judgment is proper as to Plaintiff's claim against Ethel Wheeler and their disagreement over when employees should break for lunch.  Even though Plaintiff did not relieve co-workers Diane Amos and Jill Tomaszewski for lunch as requested, Ms. Wheeler did not discipline Plaintiff for his comments or actions.  Accordingly, the Court finds that Plaintiff did not experience an adverse employment action as a result of Ms. Nunn and Ms. Wheeler's actions.

Further, as the Defendant points out, Plaintiff has failed to identify any similarly situated employees not in his protected classifications that were treated more fairly, and as such, has not made a *prima facie* showing of discrimination under the *McDonnell Douglas* framework.

Finally, Plaintiff has presented no admissible evidence supporting his allegation that Kimberly Nunn falsified grievance reports or persuaded Issa Hawkins to change her statement. Even if Plaintiff had submitted admissible supporting evidence, these allegations are not properly before this Court because these incidents were not the subject of his EEO Complaints.  *See*

21

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985).

## CONCLUSION

Based on the foregoing, Plaintiff has not set forth any specific facts showing that there is a genuine factual issue for trial, and he cannot support his claims of discrimination on the basis of race, gender, and prior EEO activities.   Under the Summary Judgment Standard of Rule 56(c), Defendant has established that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.   Therefore, the Defendant's Motion for Summary Judgment [DE 32] is **GRANTED** in all respects; **JUDGMENT is hereby ENTERED** in favor of Defendant John E. Potter, Postmaster General of the United States and against Plaintiff Morris Martin. All pre-trial and trial settings are **VACATED**.

SO ORDERED this 30th day of August, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record
        *Pro se* Plaintiff Morris Martin, 8623 Shadow Ridge Lane, Apt. C, Indianapolis, IN 46239